CITY OF MAYFIELD HEIGHTS, Appellee,

v.

RIDDLE, Appellant.

[Cite as *Mayfield Hts. v. Riddle* (1995), 108 Ohio App.3d 337.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68868.

Decided Dec. 20, 1995.

*George J. Argie,* Mayfield Heights Prosecutor, and *Dominic J. Vitantonio,* Assistant Prosecutor, for appellee.

*Nicholas J. Schepis,* for appellant.

JAMES D. SWEENEY, Presiding Judge.

Defendant-appellant Lindell Riddle appeals from his conviction for criminal trespass in violation of the Mayfield Heights Codified Ordinances 541.12. After a trial to the bench, the appellant was convicted and sentenced to a term of imprisonment of thirty days and fined $250 plus court costs. The term of imprisonment was suspended on the condition that there be no similar charge within one year. Execution of sentence was stayed pending appeal.

The appellant was convicted of criminal trespass; specifically, he was convicted of gaining access to the property of Mary Clare Bushman by deception. As a defense, the appellant attempted to show that the Mayor of Mayfield Heights, Margaret Egensperger, was using this prosecution as a reprisal for his political activism.

As background, it is important to note that the evidence admitted before the trial court indicates that the appellant had expressed his displeasure with Mayor Egensperger before city council. The appellant charged that the Mayor had constructed an addition to her home without the proper documentation and that she subsequently failed to pay the appropriate taxes on the addition.

On December 29, 1994, the appellant knocked upon the door of the Bushman residence in Mayfield Heights. The Bushmans happen to be the next-door

neighbors of Mayor Egensperger. Mrs. Bushman was not home and the knock was answered by her nineteen-year-old daughter, Meggan Bushman. Ms. Bushman, a high school graduate who attends Lakeland Community College, is employed by Carlton Cards. She is also employed on an as-needed basis by Deacon's Chrysler Plymouth to answer telephones.

When the appellant knocked on the door of the Bushman residence, Ms. Bushman was at home with her younger sister. Although the appellant knocked on the front door, Ms. Bushman went through the garage door in order to greet him. As she was exiting the garage, the appellant walked up to her and engaged her in conversation.

Initially, the appellant introduced himself and shook her hand. Ms. Bushman testified that although the appellant stated his name, she could not recall what name was given. She also stated that he did not give her a card and that he was wearing a Mopar jacket. The appellant inquired as to her identity and she responded that her mother was at work and she was Mrs. Bushman's daughter.

The appellant inquired if he could ask questions regarding the addition to the house. When Ms. Bushman responded that there was no addition, the appellant showed her a copy of the minutes of the Mayfield Heights Board of Review for August 20, 1987, where drawings had been approved and submitted under her father's name for a rear addition. When Ms. Bushman restated that there had been no addition, the appellant showed her a map of the house. This map or plan was on a normal size piece of paper and looked official. It was not hand drawn. The appellant pointed out a room behind the garage, and she stated that was the living room. She informed him that it had been present since she moved into the home fifteen years ago.

The papers shown to Ms. Bushman were taken from a folder with a Case Western Reserve University label. In the folder Ms. Bushman noticed other papers with the Mayor's name on them.

The appellant asked, and was granted, permission to walk to the rear of the home. The appellant noted that Ms. Bushman was ill and stated that he could proceed by himself if she wished to return indoors. She decided to accompany him. Once at the rear of the house the appellant asked various questions regarding the addition. Ms. Bushman informed the appellant that there had never been a screened-in patio, but that the house next door had such a patio prior to the Mayor's purchase of the home. The appellant asked what became of the Mayor's patio, and Ms. Bushman responded that when the Mayor moved into the house, the patio was made into an addition. The appellant responded that perhaps it was the neighbor's house in which he was interested. The Mayor's addition may be seen from the rear of the Bushman residence. The appellant left

at the conclusion of this conversation. The appellant was at the home for a total of approximately ten to fifteen minutes.

When asked why she believed that the appellant was someone from the city, she responded that he had official-looking documents, a map of the house, and paperwork with the Mayor's name on it. Ms. Bushman stated, "I just assumed that it had something to do with the city." Ms. Bushman testified that the appellant neither stated that he was or was not from the city or the building department. The reason she permitted him on the property was because she assumed he was from the city and had a right to be there.

Upon cross-examination, Ms. Bushman testified that neither the folder, the appellant's truck, nor his dress looked "official" in any way. The appellant was friendly and polite, her personal space was not invaded and she never felt afraid.

Ms. Bushman testified that the appellant did not say that he was a building inspector, or from the building department, or that he was an official representing the city, or that he was from the architectural board of review. He did not state that he was on official business. Ms. Bushman did not ask the appellant where he obtained the papers in the folder or his occupation or if he was from Case Western or the purpose of his visit. She did not ask him why he was asking about the room addition. She did not ask him to leave or indicate that she would rather not answer questions. He never insisted upon an answer and never refused to answer any of her questions. Ms. Bushman testified that she answered the appellant's questions voluntarily.

Ms. Bushman also testified that she consented to appellant's entry of the back yard and that she was the one who first mentioned the house next door. She did not telephone her mother or the building department prior to granting permission. She did not attempt to verify the appellant's identity. She did not ask to take a close look at the papers to which he referred. She telephoned her mother immediately after the appellant left and her mother was furious with her for the way she had handled the situation.

The appellant sets forth four assignments of error.

The second assignment of error will be considered first:

"The trial court erred in failing to grant defendant's motions for acquittal pursuant to Criminal Rule 29."

The appellant argues that the trial court erred when it denied the motion for acquittal pursuant to Crim.R. 29. The appellant asserts that the appellee failed to present evidence that the appellant knew he was creating, or that he would create, a false impression that he was a city official. The appellant argues that the appellee presented no evidence that the appellant knowingly created a false impression and perpetuated it by the omission of material information.

 A reviewing court may not reverse a judgment of conviction in a criminal case where the guilty verdict was returned by the trier of fact on sufficient evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. An appellate court's function, when reviewing the sufficiency of the evidence, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.,* citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

"Criminal trespass" is defined in Mayfield Heights Codified Ordinances 541.12 which states:

"(a) Criminal Trespass.

"(1) No person, without privilege to do so, shall do any of the following:

"A. Knowingly enter or remain on the land or premises of another.

"* * *

"(3) It is no defense to a charge under this subsection that the offender was authorized to enter or remain on the land or premises involved, when such authorization was secured by deception."

The definition of "deception" is set forth in R.C. 2913.01(A):

"(A) 'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

"Knowledge" is defined in R.C. 2901.22(B):

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

 The prosecution has the burden of establishing all material elements of trespass beyond a reasonable doubt. Trespass statutes, criminal in nature, are generally to be strictly construed. *State v. Hohman* (1983), 14 Ohio App.3d 142, 14 OBR 158, 470 N.E.2d 162. In order to be guilty of criminal trespass through

deception, a defendant must be aware either that a false impression is created or perpetuated or, knowing that the victim holds a false impression, withholds or prevents the victim from obtaining information to the contrary.

The city of Mayfield Heights presented no evidence at trial that the appellant was consciously aware that a false impression of his status was held by Ms. Bushman, and there is no evidence that Ms. Bushman had any articulable foundation for her beliefs. The testimony of Ms. Bushman indicates that neither by word nor deed did the appellant intimate that he was in any way connected to the city government.

Ms. Bushman assumed the appellant to be an official when all other indications, such as his motor vehicle and dress, indicated that he was an ordinary citizen. Every item of paperwork shown to Ms. Bushman was a public document available to any citizen for the asking.

Further, the appellant did not withhold information nor prevent Ms. Bushman from seeking information from him. She did not ask even one question. There is not one piece of objective information given by Ms. Bushman in her testimony which indicates that she had a reasonable belief that the appellant's status arose from a position as a city official. A criminal conviction should not arise from an unsubstantiated belief.

Since the appellee failed to present any evidence that the appellant trespassed upon the Bushman property by perpetuating a deception, the appellant's second assignment of error is well taken.

The appellant's first, third and fourth assignments of error are moot pursuant to App.R. 12.

The judgment is reversed and the appellant is ordered discharged.

*Judgment reversed.*

HARPER and KARPINSKI, JJ., concur.