**Lindell V. RIDDLE, et al., Plaintiffs,**

v.

**Margaret EGENSPERGER,
et al., Defendants.**

**No. 1:96 CV 2703.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 27, 1998.

John M. Manos, Michael Anthony Iacobrlli, Jr., Manos, Pappas, Stefanski & DeFoy, Cleveland, OH, for Plaintiffs.

Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Leonard F. Carr, Leslie Y. Spencer, Carr, Feneli & Carbone, Mayfield Heights, OH, for defendants Margaret Egensperger, Leonard F. Carr, George Argie, Thomas J. Slivers, Chris Sonnhalter, Dolores Socoloff.

Gino P. Zavarella, Cleveland, OH, for Roland R. Zavarella.

Gino P. Zavarella, Cleveland, OH, Leonard F. Carr, Carr, Feneli & Carbone, Mayfield Heoghts, OH, Marc A. Sanchez, Davis & Young, Cleveland, OH, Mary Clare Bushman, Mayffield Heights, OH, for Howard A. Glickman.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon a Report and Recommendation (Document # 109) of a Magistrate Judge of this Court submitted on February 3, 1998, recommending that Defendants' Motions for Summary Judgment be granted as to each of the Defendants as to the federal claims and that the state claims be dismissed. The named Report is hereby ADOPTED AS MODIFIED by this Court, along with the findings of fact and conclusions of law therein.

### Factual Background

The critical events in this case began on December 29, 1994 when Plaintiff Lindell Riddle went to the home of Mary Clare Bushman (hereinafter Mrs. Bushman) in Mayfield Heights.[1] In an apparent effort to demonstrate that Defendant Mayor Margaret Egensperger had constructed an addition to her home without required permits and thereafter evaded her property taxes, Mr. Riddle went to the Bushman residence seeking information about an addition he believed was made to their home. The Bushmans live next door to Defendant Egensperger.

Upon arrival at the Bushman residence, Mr. Riddle was greeted by Meggan Bushman (hereinafter Miss Bushman), Mrs. Bushman's nineteen year old daughter, who was home alone with her younger sister. Mr. Riddle introduced himself and began asking questions about an addition to their home. Miss Bushman said they had no addition and explained that her mother was not home. At that point Mr. Riddle revealed copies of official documents relating to their property and continued to ask questions. He then asked Miss Bushman if he could inspect the rear of their property. She obliged, accompanied him into the backyard, and stayed with him until he left.

Miss Bushman apparently thought Mr. Riddle worked for the City of Mayfield Heights because she promptly called her mother at work after he left, and explained to her mother that a city official had been to the home asking her questions about their property. Mrs. Bushman immediately called the Mayfield Heights Building Department to inquire why a city official had gone to her home and spoken with her daughter. A Building Department employee explained to Mrs. Bushman that no one had been to her home that day, and suggested that she call the police to report her concerns. Mrs. Bushman later contacted the police and, after learning the identity of Mr. Riddle, filed a complaint against him. Based upon Mrs. Bushman's complaint, a warrant was issued by the Municipal Court and Mr. Riddle was arrested and charged with criminal trespass.

Following a bench trial in Lyndhurst Municipal Court, Mr. Riddle was convicted of criminal trespass. He appealed his conviction, and the Eighth District Court of Appeals reversed the conviction. The court reasoned that in order to be guilty of the crime of criminal trespass a defendant "must be aware either that false impression is created or perpetuated or, knowing that victim holds false impression, withholds or prevents victim from obtaining information to contrary." *City of Mayfield Heights v. Riddle,* 108 Ohio App.3d 337, 670 N.E.2d 1019, 1021 (1995). The court held that Miss Bushman's "unsubstantiated" belief that Mr. Riddle was a city official was insufficient to sustain a conviction for criminal trespass beyond a reasonable doubt.

Mr. Riddle and his wife Deborah Irvine then filed this civil action against Mayor Egensperger, Mrs. Bushman, and various

---

1. The history between Mr. Riddle and many of the Defendants is actually much longer and more involved. Mr. Riddle is a resident of Mayfield Heights, a self-appointed champion of constitutional rights, and an outspoken critic of a number of city policies. He frequently speaks during the public comment portion of city council meetings where he has publicly charged some of the Defendants with unethical behavior. For purposes of this case, however, the narrative will be limited to the incident of December 29, 1994 and its aftermath.

other persons either employed by or associated with the City of Mayfield Heights, seeking, *inter alia*, damages for the aforementioned prosecution.

## Procedural History

The Plaintiffs filed a Complaint against Defendants Mayor Egensperger, Leonard Carr, George Argie, Thomas Slivers, Chris Sonnhalter, Dolores Klafta, Sheldon Socoloff, Roland Zavarella, Howard Glickman, Al Kay, Geno Manfredi, Martha McCrary, Charles Pona, The City of Mayfield Heights, and Mary Clare Bushman on December 17, 1996. The Plaintiffs allege violations of 42 U.S.C. §§ 1983, 1985, 1986 and assert state law claims for false arrest, malicious prosecution, conspiracy, intentional infliction of emotional distress, and loss of consortium. After extensive discovery, Defendants filed Motions for Summary Judgment (Documents # 57, # 58, and # 60). Plaintiffs filed a brief in opposition and the Defendants filed briefs in reply.

This Court then referred this case to Magistrate Judge Patricia A. Hemann pursuant to 28 U.S.C. § 636 and Local Rule 72.2. The Magistrate Judge issued her Report and Recommendation on February 3, 1998, recommending that Defendants' Motions for Summary Judgment be granted on Plaintiffs' federal claims and recommending that Plaintiffs' state law claims be dismissed. Specifically, the Magistrate Judge concluded that the Defendants are entitled to summary judgment because, *inter alia*, no reasonable jury could conclude that the Defendants lacked probable cause to believe that Mr. Riddle committed the crime of criminal trespass. Likewise, Magistrate Judge Hemann determined that no reasonable jury could find that Defendants conspired against Mr. Riddle in order to deprive him of his constitutional rights.

Plaintiff timely filed Objections to the Recommended Decision and the City Defendants filed a Response as well. The Report and Recommendation of the Magistrate Judge along with the Plaintiffs' Objections and Defendants' Response are herein reviewed by the Court.

## Standard of Review for Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's Report and Recommendation depends upon whether objections were made to that Report. When objections are made to a Report and Recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R.CIV.P. 72(b) provides this standard of review; it states, in pertinent part, the following:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Accordingly, this Court will review the Reports and Recommendation, to which timely objections have been filed, *de novo*. See *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993). As Plaintiffs' Objections relate only to the Magistrate Judge's determination relating to probable cause and the Plaintiffs' conspiracy claims, only those issues need be addressed, which this Court will review *de novo*.

## Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED.R.CIV.P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because

they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250.

## Discussion

The Plaintiffs object to the Magistrate Judge's recommendation that Defendants' Motions for Summary Judgment be granted and argue they have raised genuine issues of material fact which would preclude summary judgment. Specifically, the Plaintiffs contend that the Magistrate Judge improperly weighed the evidence and failed to give them the benefit of all reasonable inferences. In their Response, Defendants urge this Court to adopt the Report and Recommendation of the Magistrate Judge as to Plaintiff's federal claims, and further to modify the Report and Recommendation as to Plaintiff's state claims, inasmuch as the record reflects that there is no evidence to sustain these claims.

■ Plaintiffs assert that the Magistrate Judge improperly weighed the evidence relating to probable cause and conspiracy. As to probable cause, it is generally held that where "the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg,* 136 F.3d 1070, 1075 (6th Cir.1998)(quoting *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir.1987)). As it is unclear from the record whether or not Mr. Riddle contested this issue in a preliminary hearing, it will be examined herein. Probable cause for an arrest exists where sufficient facts and circumstances would lead a person of reasonable caution to believe that the suspect has committed a crime. *See Sandul v. Larion,* 119 F.3d 1250, 1256 (6th Cir.1997).

■ Mr. Riddle does not deny any of the underlying facts which led to his arrest and prosecution, i.e. that he went to the Bushman residence, discovered the mother was not home, spoke with her teenage daughter, possessed copies of official documents pertaining to the Bushman's private residence, inquired about the house, and sought access to the backyard. Rather, Mr. Riddle consistently refers to the court of appeals decision reversing his conviction for criminal trespass. He intimates that the appellate decision not only vindicates him on the criminal charges but somehow demonstrates a lack of probable cause in support of his claims. However, the appellate court's opinion merely stands for the proposition that Mr. Riddle could not be found guilty of criminal trespass beyond a reasonable doubt because the appellate court found insufficient evidence to prove beyond a reasonable doubt that Mr. Riddle knew or should have known that Miss Bushman thought he was a city official. In making the leap from criminal vindication to success in a civil case, however, Mr. Riddle fails to comprehend the tremendous difference between the evidentiary burden necessary to support a criminal conviction versus that required to establish probable cause.

Furthermore, even if Miss Bushman possessed an incorrect belief about Mr. Riddle's status, there is no dispute that Miss Bushman assumed he was a city official and conveyed that belief to her mother. Thus, although Mr. Riddle's approach and manner may have led Miss Bushman to candidly respond to his questions and permit him to enter the backyard such that his actions did not rise to the level of criminal trespass, the circumstances surrounding the incident are most certainly sufficient to generate outrage in a parent concerned about her daughters home alone, particularly after she learned the stranger at her home was not a City employee on official business.

■ These were the concerns that Mrs. Bushman conveyed to the police, leading to a warrant for his arrest and criminal charges being filed against him. A reasonable person under the circumstances could believe Mr. Riddle had committed a crime. "A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988).

The Plaintiffs attempt to raise an issue of fact by arguing that Mrs. Bushman initially was not bothered by Mr. Riddle's actions at her home, but only became concerned after she spoke with Mayor Egensperger. They

claim Mrs. Bushman admitted this fact to Lieutenant Alvin Schmitt. However, the "evidence" offered in support of this allegation consists of an unauthenticated copy of an apparent deposition of Lieutenant Schmitt.[2] More significantly, the purported testimony is contained in an appendix to Plaintiffs' Brief which consists of sporadic pages of this alleged deposition, providing absolutely no context to the statement.[3]

In contrast to the Plaintiffs' unsubstantiated assertions, all the evidence properly before the Court demonstrates that Mrs. Bushman was rightfully outraged. Therefore, she immediately called the City seeking an explanation as to why this stranger had been at her home. Indeed, even the appellate court that reversed Mr. Riddle's conviction acknowledged this fact by stating that Miss Bushman revealed in her trial testimony that when she telephoned her mother immediately after Mr. Riddle left, "her mother was furious at her for the way she handled the situation." *See City of Mayfield Heights v. Riddle*, 108 Ohio App.3d 337, 670 N.E.2d 1019, 1021 (1995). Furthermore, Mrs. Bushman's belief that the man at her home represented himself as a city official is bolstered by the fact that the first call she made was to the Building Department.

In this instance, the public officials charged with serving and protecting the people of Mayfield Heights properly responded to the complaints of a justifiably concerned citizen. These officials would have been derelict in their duty had they not responded to Mrs. Bushman's charges that an uninvited man had arrived at her home, spoke to a teenage girl home alone, demonstrated possession of official records relating to their private residence, asked questions, and sought access to their backyard. Under the foregoing circumstances, the Magistrate Judge properly determined that a reasonable jury could only conclude that probable cause existed to believe that Mr. Riddle committed the crime of criminal trespass.

On the conspiracy issue, Plaintiffs again contend the Magistrate Judge improperly weighed the evidence because they "painfully detail the motive, means and opportunity of each conspirator to prevent Mr. Riddle from exercising his First Amendment Rights at council meetings." Although the adverb is accurate, the contention is not.

■ In order to succeed on a claim of conspiracy under § 1985, a plaintiff must show: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and, 4) a deprivation of a right or privilege of a citizen of the United States. *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir.1987)(citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

In this case, the Plaintiffs have failed to provide any evidence from which a reasonable jury could infer the existence of a conspiracy. The fact that many people in Mayfield Heights may be annoyed by Mr. Riddle or the fact that the Defendants—most of whom work for the City of Mayfield Heights—may have spoken to each other does not give rise to a conspiracy, even construing all the of evidence in favor of the Plaintiffs. There is simply no evidence to give rise to a justifiable inference of conspiracy.

Moreover, the evidence fails to demonstrate that any of the Defendants deprived him of his rights and, in fact, the record demonstrates that Mr. Riddle frequently exercised his constitutional rights in the City of Mayfield Heights. Hence, the Magistrate Judge properly determined that no reasonable jury could conclude a conspiracy existed.

Accordingly, no genuine issues of material fact remain to be litigated. Mr. Riddle has failed to demonstrate the necessary elements to show that the Defendants acted without

---

**2.** The depositions of twenty-seven individuals have been filed with the Court, however, this purported deposition of Lt. Schmitt has never been filed with the Court, and there is no affidavit attesting to its authenticity.

**3.** The unreliability of this improper evidence is compounded by the fact that Plaintiffs' pleadings are replete with mischaracterizations of facts.

probable cause or conspired to deprive him of his constitutional rights. Therefore, Defendants are entitled to judgment as a matter of law on all of the federal claims.

■ The Magistrate Judge recommends dismissal of the Plaintiffs' state law claims without prejudice. These include false arrest, malicious prosecution, conspiracy[4], intentional infliction of emotional distress, and loss of consortium. In a "civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims so related to [the original jurisdiction claims] that they form part of the same case or controversy..." 28 U.S.C. 1367(a). The districts may decline to exercise this supplemental jurisdiction if the court has dismissed all the claims over which it had original jurisdiction. 28 U.S.C. 1367(c). In general, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992)(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). However, a district court possesses discretion to exercise supplemental jurisdiction even when the state law claims are all that remain in the case. *See Saglioccolo v. Eagle Insurance Co.*, 112 F.3d 226 (6th Cir.1997). The Sixth Circuit has recognized the propriety of deciding state law claims when "there was substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state claims." *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir.1991)(citing *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047 (6th Cir.1986). Such a similarity exists in this case. The "commonsense policies of judicial economy [outweigh] any benefit in allowing an Ohio court to decide the state law claim[s]." *Id.* Therefore, the Plaintiffs' state law claims will be considered herein.

■ The existence of probable cause precludes a finding of malicious prosecution

under Ohio law. See *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990). Probable cause as it pertains to a malicious prosecution as been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 166 (1960). The evidence before this Court demonstrates that a reasonable jury could only conclude that the Defendants' possessed probable cause based upon the foregoing facts and circumstances. Therefore, the Plaintiffs cannot maintain their state law claim for malicious prosecution. Closely akin to an action for malicious prosecution is false arrest. *Evans v. Smith*, 97 Ohio App.3d 59, 646 N.E.2d 217, 224 (1994)(citing *Rogers v. Barbera, supra.*). An action for false arrest requires a plaintiff to show that he was deprived of his liberty without lawful justification. *Id.* The record is clear that the Mayfield Heights had probable cause to arrest Mr. Riddle and that the police arrested him pursuant to a valid warrant. Accordingly, he cannot demonstrate that he was deprived of his liberty without justification. Therefore, Defendants' are entitled to summary judgment on Plaintiffs' claims for malicious prosecution and false arrest.

■ Furthermore, "liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1139 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996)(quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983). In this case, there is no evidence of improper conduct much less conduct which goes beyond the bounds of decency. Defendants are entitled to summary judgment on this claim.

---

4. In addition to the fact that there is absolutely no evidence to support a justifiable inference of conspiracy in this case, the absurdity of this claim is underscored by the fact that the Plain-

tiffs' seek damages for conspiracy in violation of OHIO REV CODE § 2921.04—an offense subject to criminal prosecution.

Finally, a claim for loss of consortium is derivative in nature and dependent upon a primary cause of action. *See Gearing v. Nationwide Insurance Co.,* 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996); *see also Messmore v. Monarch Machine Tool Co.,* 11 Ohio App.3d 67, 463 N.E.2d 108 (1983). Consequently, because Defendants are entitled to summary judgment on all of Plaintiffs' primary claims, they are also entitled to summary judgment on the loss of consortium claim.

### Conclusion

After reviewing the Report and Recommendation of the instant case and considering all of the pleadings, affidavits, motions, and other filings of the parties, this Court adopts the findings of fact and conclusions of law on Plaintiffs' federal claims as its own. This Court also modifies the Report and Recommendation of the Magistrate Judge inasmuch as Defendants are also entitled to summary judgment on Plaintiffs' state law claims as well. Accordingly, Defendants' Motions for Summary Judgment are GRANTED on all counts of the Complaint and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

Pursuant to a Memorandum Opinion and Order of this Court, the Report and Recommendation of Magistrate Judge Patricia A. Hemann (Document # 109) is ADOPTED AS MODIFIED.

Consistent with this ruling, Defendants' Motions for Summary Judgment (Documents # 57, # 58, and # 60) are GRANTED on all counts of the Complaint, and this case is DISMISSED WITH PREJUDICE. All costs to the Plaintiff.

IT IS SO ORDERED.