*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0341P (6th Cir.)
File Name: 01a0341p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LINDELL V. RIDDLE and
DEBORAH L. IRVINE,
      *Plaintiffs-Appellants*
          *(99-3787),*

JOHN M. MANOS and
MICHAEL A. IACOBELLI, JR.,
      *Attorneys-Appellants*
          *(99-3746),*

      *v.*

MARGARET EGENSPERGER,
LEONARD F. CARR, GEORGE
ARGIE, THOMAS J. SLIVERS,
CHRIS SONNHALTER,
DOLORES KLAFTA, SHELDON
SOCOLOFF, ROLAND R.
ZAVARELLA, HOWARD A.
GLICKMAN, AL KAY, GENO
MANFREDI, CHARLES G.
PONA, and CITY OF MAYFIELD
HEIGHTS,
      *Defendants-Appellees,*

Nos. 99-3746/3787

1

MARTHA E. MCCRARY and
MARY CLARE BUSHMAN,
                    *Defendants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-02703—Donald C. Nugent, District Judge.

Argued:  August 1, 2000

Decided and Filed:  September 25, 2001

Before:  MOORE and CLAY, Circuit Judges; HOOD,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Robert Eddy, GALLAGHER, SHARP, FULTON
& NORMAN, Cleveland, Ohio, Richard D. Eisenberg,
ZIMMERMAN, CATICCHIO, EISENBERG & MODICA,
Lyndhurst, Ohio, for Appellants.  L. Bryan Carr, CARR,
FENELI & CARBONE, Mayfield Heights, Ohio, for
Appellees.  **ON BRIEF:**  Robert Eddy, Gary F. Werner,
GALLAGHER, SHARP, FULTON & NORMAN, Cleveland,
Ohio, Richard D. Eisenberg, ZIMMERMAN, CATICCHIO,
EISENBERG & MODICA, Lyndhurst, Ohio, for Appellants.
L. Bryan Carr, Leonard F. Carr, CARR, FENELI &
CARBONE, Mayfield Heights, Ohio, Phillip J. Campanella,
CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, Gino
P. Zavarella, Jr., Cleveland, Ohio, for Appellees.

_____

[*] The Honorable Denise Page Hood, United States District Judge for
the Eastern District of Michigan, sitting by designation.

cannot conclude, as the rest of the panel does today, that the district court abused its discretion in determining that the defendants' aggressive response to the plaintiffs' lawsuit was reasonable.

Put simply, the district court did not err in determining that, given the facts of this case, the plaintiffs and their counsel had engaged in the sort of "egregious" and/or "vexatious" conduct for which fees may be awarded under the statutes in question. The mere fact that the plaintiffs brought this suit under civil rights statutes should not insulate them (or their counsel) from the consequences of their choices. For this reason, I respectfully dissent.

HOOD, D. J., delivered the opinion of the court. CLAY, J. (pp. 23-25), delivered a separate opinion concurring in the result. MOORE, J. (pp. 26-30), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

DENISE PAGE HOOD, District Judge. On December 17, 1996, Plaintiffs-Appellants Lindell Riddle and Deborah Irvine, filed a suit against the Defendants-Appellees, the City of Mayfield Heights, various City officials, and individual Defendant Roland R. Zavarella, a resident member of the Community Reinvestment Area Housing Council for the City, appointed by the Mayor. Riddle and Irvine were represented by Michael Iacobelli and John M. Manos, also Appellants in the instant appeal.

Plaintiffs claimed civil rights violations under 42 U.S.C. §§ 1983, 1985 and 1986, based on Riddle's First, Fourth and Fourteenth Amendment rights, and state law claims for false arrest, malicious prosecution, conspiracy, intentional infliction of emotional distress, and loss of consortium by Irvine. The District Court granted Defendants' Motion for Summary Judgment dismissing the Complaint on February 27, 1998. On a prior appeal, this Court affirmed the District Court's ruling on April 22, 1999. *See Riddle v. Egensperger,* No. 98-3321, 1999 WL 28370, *1 (6th Cir. Apr. 27, 1999)(unpublished opinion).

The City of Mayfield, various City officials and Zavarella, filed Motions for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 and/or 28 U.S.C. § 1927, which was granted by the District Court on November 16, 1998. On May 10, 1999, the District Court entered an order awarding $119,202.01 in attorney fees and costs against Plaintiffs Riddle and Irvine and their lawyers, Iacobelli and Manos. Timely appeals were filed

from the District Court's November 16, 1998 and May 10, 1999 orders.

The District Court adopted the Magistrate Judge's finding that with the exception of the Fourth Amendment claim and related state claims of false arrest and malicious prosecution, Plaintiffs' claims were frivolous, unreasonable, and without foundation. (J.A., pp. 133, 138) The District Court went beyond the recommendation of the Magistrate Judge that Defendants were entitled to attorney fees associated only with Defendants' preparation of the motions for summary judgment and awarded attorney fees and costs relating to discovery as well. (J.A., pp. 133, 139) After further submission of affidavits in support of the requested attorney fees and costs, the District Court adopted the Magistrate Judge's Report and Recommendation ordering Plaintiffs Riddle and Irvine, and their attorneys of record, Manos and Iacobelli, to pay $27,452.05 to Defendant Zavarella and $91,750.96 to the City of Mayfield Heights and various City officials. (J.A., pp. 154, 157)

On appeal, Riddle and Irvine argue the following: 1) that the District Court abused its discretion in awarding attorney fees to the prevailing Defendants under 42 U.S.C. § 1988 because their claims were not frivolous, unreasonable or without foundation; 2) that the District Court abused its discretion in finding that Plaintiffs and their attorneys were jointly and severally liable for attorney fees without advising Plaintiffs of the conflict of interest posed by the continued representation of their attorneys during the pendency of the attorney fee petition; 3) that the District Court abused its discretion because the Plaintiffs' ability to pay was not considered; and 4) that the hours and fees billed were duplicative and the hourly rates were not appropriate for the experience of the attorneys actually doing the work.

Manos and Iacobelli argue on appeal that: 1) the District Court erred in awarding fees under 42 U.S.C. § 1988; 2) the District Court erred and abused its discretion in awarding fees

related state claims, Riddle's claims were frivolous, unreasonable, and without foundation, and that the plaintiffs should have dismissed these claims after discovery had shown that they were without factual support. The district court thus awarded the movants attorney fees for the preparation of motions for summary judgment pertaining to all of Riddle's claims except the Fourth Amendment and related state claims. In addition, the district court granted the movants attorney fees for discovery costs related to the groundless claims based on the plaintiffs' litigation tactics.

In reviewing the district court's award of attorney fees based on this record, I am not "firmly convinced that a mistake has been made." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation omitted). Although the record indicates that Mayor Egensperger and the other defendants did not like Riddle, the plaintiffs and their counsel were unable to uncover any evidence of the alleged conspiracy to violate Riddle's constitutional rights. The district court determined that the plaintiffs' pursuit of these groundless claims, after their groundlessness was apparent, was sanctionable, and I am unable to state that this determination was an abuse of discretion.

Moreover, the district court's award of attorney fees and costs against the plaintiffs and their counsel for discovery was surely influenced by the manner in which the plaintiffs and their counsel pursued this litigation. For example, when the defendants requested that the plaintiffs and their counsel provide a list of individuals with information relating to Riddle's claims, the plaintiffs provided the defendants with a list of approximately 400 names that included such notables as former U.S. Senator Howard Metzenbaum. At one point, the plaintiffs claimed that Senator Metzenbaum had information regarding the plaintiffs' loss of consortium claim; when pressed, however, Riddle admitted that Senator Metzenbaum had no such information and that he had never spoken to the former senator. Given facts such as this, I

After his conviction was reversed, Riddle, along with his wife, Deborah L. Irvine, filed the present civil rights action in the United States District Court for the Northern District of Ohio naming fourteen individual defendants as well as the City of Mayfield Heights as defendants.[1]   The complaint alleged generally that the criminal trespass prosecution, along with several other adverse actions, was the result of a conspiracy on the part of the defendants to retaliate against Riddle for exercising his First Amendment right to criticize the mayor's administration.   The complaint stated nine grounds for relief:  a conspiracy claim based on 42 U.S.C. § 1985(3); a claim predicated on 42 U.S.C. § 1983 for violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments;[2] a claim based on 42 U.S.C. § 1986; a state law false arrest claim; a state law claim for malicious prosecution; a state law claim for conspiracy and corrupt activity; a claim for intentional infliction of emotional distress; a loss of consortium claim; and a § 1983 claim against the City of Mayfield Heights.

The district court granted the defendants' motion for summary judgment on the federal counts and dismissed the state claims without prejudice.  The defendants, with the exception of Bushman, then moved for attorney fees and costs against both Riddle and Irvine, pursuant to 42 U.S.C. § 1988, and their attorneys, Manos and Iacobelli, pursuant to 28 U.S.C. § 1927.  The district court concluded that, with the exception of Riddle's Fourth Amendment claim and the

---

[1]The individual defendants named were Margaret Egensperger, the mayor of Mayfield Heights; Leonard Carr, the city's law director; George Argie, the city prosecutor; Thomas Slivers, the former chief of police; Chris Sonnhalter, a detective in the Mayfield Heights Police Department; Mary Clare Bushman; Sheldon Socoloff, the building director; Roland Zavarella, an advisor to the mayor; Dolores Klafta, a city parks and recreation commissioner; and city councilpersons Al Kay, Howard Glickman, Geno Manfredi, Martha McCrary, and Charles Pona.

[2]Defendants Bushman and Zavarella were not named in the § 1983 charges, as they are not state actors.

and costs under 28 U.S.C. § 1927; 3) the record does not support the District Court's award of fees and costs; and 4) the District Court abused its discretion in determining the amount of fees and costs under 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

For the reasons set forth below, the District Court's orders awarding attorney fees and costs are REVERSED.

## I. ANALYSIS

### A.  Standard of Review

The standard of review on appeal is whether the district court abused its discretion in awarding attorney fees.  *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).  The record below must be reviewed to determine whether the district court's finding is factually supported.  *Id.*  "In light of a district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters, an award of attorneys' fees under § 1988  is entitled to substantial deference."  *See Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000).

### B.  42 U.S.C. § 1988

The "American Rule" with regard to attorney fees is that each party, including the prevailing party, must bear his or her own attorney fees.  *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Bunning v. Kentucky*, 42 F.3d 1008, 1013 (6th Cir. 1994).   There are certain statutes that provide for the award of attorney fees to the prevailing party.  A prevailing party in a 42 U.S.C. §§ 1983, 1985 and 1986 civil rights action, at the discretion of the trial court, is entitled to attorney fees as part of costs. 42 U.S.C. § 1988(b).  An award of attorney fees against a losing plaintiff in a civil rights action "is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th

Cir. 1986). "A prevailing defendant should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994), *quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). The Supreme Court stated:

> *In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.* No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
>
> . . . Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

*Christiansburg*, 434 U.S. at 421 (italics added). To determine whether a claim is frivolous, unreasonable or groundless, the court must determine plaintiff's basis for filing the suit. *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

The District Court awarded attorney fees based on the Magistrate Judge's Report and Recommendation that Plaintiffs' claims, except for the Fourth Amendment Claim

about an addition that had been made to the Bushman house in 1987. When Meggan told Riddle that the Bushmans had never made an addition to their home, Riddle showed Meggan a map of the property and indicated where the addition was supposed to be. Meggan informed him that there was a family room at the location in question and that the room had been there since the Bushmans purchased the home. Riddle then asked Meggan if he could walk around the property and look around, after which Meggan accompanied Riddle to the back of the house and answered more of his questions. Riddle also showed Meggan more papers bearing her father's name. Meggan later told police that she "figured since he had all these papers and stuff that he was somebody from the City." J.A. at 868.

After Riddle left the property, Meggan called her mother at work and told her that a city official had been asking questions about the property. Mrs. Bushman immediately called the Mayfield Heights building department to complain about the incident, but she was told that no one from the building department had been to the home. Sheldon Socoloff, the building director, called Mrs. Bushman back and informed her that the incident was not a building department matter, but rather a matter for the police department. Mrs. Bushman then called the police department to inform them that a stranger had been trespassing on her property and that she wanted to file a complaint, which she did the following day.

Based on Mrs. Bushman's complaint, Riddle was arrested and charged with criminal trespass by deception. Following a bench trial in Lyndhurst Municipal Court, Riddle was convicted of criminal trespass in violation of the Mayfield Heights Codified Ordinances § 541.12. The state court of appeals, however, subsequently reversed Riddle's conviction because the city had failed to prove an element of the charged offense. *See City of Mayfield Heights v. Riddle*, 670 N.E.2d 1019, 1022-23 (Ohio Ct. App. 1995).

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting. Although the awarding of attorney fees "against a losing plaintiff in a civil rights action is an extreme sanction," appropriate only in "truly egregious cases of misconduct," *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986), I am unable to conclude that the district court abused its discretion in awarding them in the present case. For this reason, I respectfully dissent.

"In light of [the] district court's superior understanding of the litigation," the award of attorney fees in such cases "is entitled to substantial deference." *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (quotation omitted). Although the panel's opinion makes reference to the unusual facts of this case at various points, the district court's decision to award attorney fees in the present case is understandable only when considered in the overall context of Riddle's civil rights lawsuit against Mayor Egensperger and the other defendants. The alleged conspiracy to violate Riddle's constitutional rights at issue in this case stemmed from a Mayfield Heights city council meeting held on November 28, 1994. At this meeting, Riddle asserted that Mayor Egensperger had built a room addition to her house seven years earlier despite having only obtained a permit to build a patio enclosure. Riddle, a self-described community activist, explained that as a result of the mayor's failure to obtain the proper permits, the proper taxes were not being paid.

After this meeting, Riddle went to the home of the mayor's next-door-neighbor, Mary Clare Bushman, to investigate these matters. Mrs. Bushman was not home at the time; instead, her nineteen-year-old daughter Meggan answered the door. Riddle told Meggan that he needed to talk with her

and related state claims of false arrest and malicious prosecution, were frivolous, unreasonable, and without foundation. (Dist. Crt. Op., Vol. I, J.A. 138-139) The Magistrate Judge recommended that attorney fees be awarded in preparing those portions of the motions for summary judgment and memoranda in support pertaining to all claims other than the alleged Fourth Amendment violation and state claims related thereto, such as the false arrest and malicious prosecution claims. (Rep. & Rec., Vol. I., J.A. 84, 89) The Magistrate Judge's recommendation was based on the District Court's acceptance of the Magistrate Judge's findings and recommendation on Defendants' Motion for Summary Judgment, noting that the District Court concluded that there was no evidence to support a justifiable inference of conspiracy, that Plaintiff was able to exercise his right to speak at public meetings, that there was no evidence Defendants took any action to interfere with those rights, and that the Fourth Amendment claim was the only viable claim which existed after discovery was completed. Specifically, the Magistrate Judge stated:

> In December 1996 plaintiffs Lindell Riddle and Deborah L. Irvine filed a complaint against the various defendants alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986 as well as state claims for false arrest, malicious prosecution, conspiracy, intentional infliction of emotional distress and loss of consortium. Both this court and Judge Nugent determined that plaintiffs' claims should be dismissed on summary judgment. Both opinions recognized that plaintiffs' central and only viable claim arose out of his arrest and prosecution for trespass and concluded that the claim must be dismissed on summary judgment because there existed probable cause for the arrest. Judge Nugent agreed with this court that plaintiffs did not have a meritorious § 1983 claim based upon a violation of their First or Fourteenth Amendment rights, did not offer any evidence of a conspiracy and did not have meritorious state claims.

* * *

Judge Nugent concluded that 'there is no evidence to support a justifiable inference of conspiracy in this case . . . .' Slip op. at 13 n. 4. The court further pointed out that as to the alleged First Amendment violation, the evidence showed that Mr. Riddle frequently and vigorously exercised his right to speak at public meetings. There was no evidence that defendants took any action to interfere with those rights. As to the Fourteenth Amendment claim based on Mr. Riddle's arrest, that claim was explicitly precluded by *Albright v. Oliver*, 510 U.S. 266 (1994).

In short, the Fourth Amendment claim was the only one for which a viable argument existed after discovery was completed. All other federal claims should have been dismissed by plaintiffs on the basis of insufficient factual and/or legal basis.

(J.A., pp. 84, 85, 88)

The District Court and the Magistrate Judge found that Riddle and Irvine alleged a viable claim under the Fourth Amendment. Defendants do not question this finding, other than arguing that the Fourth Amendment claim was "de minimis." As to the remaining claims, the First Amendment and conspiracy claims, we turn to the record to determine whether those claims were "frivolous, unreasonable, and without foundation." Riddle and Irvine argue that Defendants conspired to deprive Riddle of his First Amendment rights by retaliating against him for being an outspoken critic of City officials.

The elements of a § 1985 conspiracy claim are: 1) a conspiracy; 2) for purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) whereby a person is either injured in his person or property

circumstantial evidence which may not be fully fleshed out until after discovery. Therefore, a court should not impose attorney's fees on the civil rights plaintiff who files a reasonably founded claim, but ultimately loses his case on summary judgment after discovery is completed. To hold otherwise would unjustifiably add to the jurisprudence awarding attorney's fees to civil rights defendants which, in turn, may ultimately dissuade future civil rights plaintiffs from proceeding with potentially meritorious claims, thus stifling the enforcement of the civil rights statutes contrary to congressional intent. *See Newman*, 390 U.S. at 402.

Similarly, because I do not believe that Plaintiffs' counsel intentionally pursued meritless claims, I agree with Judge Hood that the district court abused its discretion in awarding Defendants' fees under 28 U.S.C. § 1927. I perceive the actions of Plaintiffs' counsel here to be consistent with normal vigorous advocacy exhibited by a plaintiff's counsel in the rightness of his cause, however wrong he ultimately may be. To the extent that Plaintiffs' counsel may have been over zealous, Defendants' counsel as well appears to have been just as overbearing in this case.

For the above stated reasons, I join in the result reached by Judge Hood finding that the district court abused its discretion in awarding Defendants attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

*York v. Ferris State Univ.*, 36 F. Supp. 2d 976, 980-83 (W.D. Mich. 1998); Jeffrey J. Fowler, Annotation, *Right of Prevailing Defendant to Recover Attorneys' Fees Under § 706(k) of Civil Rights Act of 1964 (42 U.S.C.A. § 2000E-5(k))*, 134 A.L.R. FED. 161 (1996)).

In the matter at hand, although the record as it now stands appears unsupportive of Plaintiffs' First Amendment retaliation claim under § 1983, as well as their conspiracy claims under § 1985 and § 1986, I cannot agree that these claims as brought were "unreasonable" or "without foundation." *See Christiansburg*, 434 U.S. at 421. While I find several of Riddle's actions leading to the filing of this suit to be troubling, it is not only Riddle's actions leading to the filing of this lawsuit that are at issue; rather, it is also Defendants' actions that are at issue and whether Plaintiffs could have reasonably believed that these actions provided a foundation for relief. *See id.* Because I find that the record provides Plaintiffs with reasonable grounds for bringing these claims, I therefore conclude that Defendants are not entitled to attorney's fees. *See id.* (stating that "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, [or because upon further discovery it is clear that a plaintiff cannot prevail,] his action must have been unreasonable or without foundation").

Under the facts of this case, it is this result that advances Congress' intent of entrusting the vigorous enforcement of the civil rights statutes to plaintiffs who serve in this regard as "private attorney[s] general." *See Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402 (1968) ("When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law."). To be sure, it is rare that civil rights cases are based on direct evidence, *see Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998); instead, these cases are developed and ultimately decided on

or deprived of any right or privilege of a citizen of the United States. *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir. 1987). A plaintiff must show the following to state a retaliation claim: 1) plaintiff was engaged in a constitutionally protected conduct; 2) that a defendant's adverse action caused plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that conduct; and 3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Lucas v. Monroe County*, 203 F.3d 964, 973 (6th Cir.), *reh'g and suggestion for reh'g en banc denied* (2000).

As to the conspiracy claim, the Magistrate Judge found that Riddle produced no evidence "from which a jury could infer" that there was a conspiracy among the defendants to impinge Plaintiff's freedom of expression. The Magistrate Judge stated:

Riddle, however, has not produced either direct evidence or evidence from which a jury could infer that there was a conspiracy among the defendants to take actions that would impinge his freedom of expression. The actions that Riddle claims flowed from the alleged conspiracy are 1) statements by Defendant Klafta that 'vilified' Riddle (opposition brief at 29), and 2) two incidents in which Zavarella allegedly baited Riddle during a city council meeting.

\* \* \*

. . . In regard to the Klafta statements, there is no evidence that defendants conspired to have Klafta make the statements. Further, there is no evidence that the statements at any time prevented Riddle's exercise of his right to free speech. No reasonable jury could find that Riddle proved the elements of a § 1985(3) claim based on Klafta's statements.

During similar incidents at two city council meetings, Riddle and Zavarella engaged in altercations regarding

some video equipment which Riddle had placed on a chair in the meeting room. There is, however, no evidence that Defendants conspired with Zavarella and directed him to engage in the altercations for the reason of infringing on Riddle's First Amendment rights. The fact that some defendants, all residents of Mayfield Heights, communicated with each other does not support an inference of a conspiracy. Finally, there is no evidence that Riddle subsequently was unable to exercise his right of free expression at city council meetings or anywhere else. A reasonable jury could not find a violation of § 1985(3) under these facts.

(J.A., pp. 47, 59-61).

As to Riddle's First Amendment claim, Riddle has met the first element as a watchdog of the Mayfield Heights City Council and an outspoken critic of the City officials. "Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Id.* at 973. As to the second and third elements, the Magistrate Judge found, that "[a]fter carefully reviewing the plaintiff's memorandum in opposition and all of the exhibits offered by the parties, the court finds that Riddle has not offered evidence that would support his claim of retaliation based on alleged public ridicule or an alleged attempted prosecution regarding a building committee meeting." (J.A., pp. 47, 54) Regarding Riddle's claim that he was prosecuted for criminal trespass in retaliation for exercising his First Amendment rights, the Magistrate Judge found that although there is evidence of friction between Riddle and various city officials, there is no evidence that links the friction to the filing of the criminal charges. (J.A., pp. 47, 55-55) The Magistrate Judge further noted,

> Riddle argues that the police department then handled the Bushman report differently because officials wanted to use the incident to retaliate against Riddle for past

---

## CONCURRENCE

---

CLAY, Circuit Judge, concurring. I respectfully cannot fully embrace the reasoning of either of my learned colleague's opinions. However, because I ultimately agree that the district court abused its discretion in awarding Defendants attorney's fees, and because I share in the concern that awarding attorney's fees to defendants under § 1988 in a case such as this may have a chilling effect on potentially meritorious civil rights plaintiffs, I join in the result reached by Judge Hood.

As the Supreme Court made clear in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-18 (1978), for policy reasons, a prevailing civil rights plaintiff is presumptively entitled to reasonable attorney's fees unless a showing of "special circumstances" is made. These policy reasons include Congress' concern for the vigorous enforcement of civil rights and the role of plaintiffs in achieving this enforcement. *Id.* Because policy considerations such as these are absent in the case of a prevailing civil rights defendant, attorney's fees are presumptively unavailable, where such fees are awarded only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . ." *Id.* at 421. Indeed, "[a]warding attorney's fees to prevailing defendants in civil rights actions in only the most extreme and egregious cases of misconduct, yet awarding attorney['s] fees to prevailing civil rights plaintiffs on a regular basis under § 1988, comports with the purpose of § 1983 as a vehicle for the enforcement of civil rights and prevents defendants – who often times are in a superior position simply by virtue of being able to afford top legal counsel – from using a heavy hand to prevent plaintiffs with potentially meritorious claims from pursuing those claims." *Roane v. City of Mansfield*, No. 98-4560, 2000 WL 1276745, at **1 (6th Cir. Aug. 28, 2000) (Clay, J.) (citing

vexatious behavior.  The District Court abused its discretion in awarding attorney fees under 28 U.S.C. § 1927.

The remaining issues need not be addressed.

## II.  CONCLUSION

For the reasons stated above, the District Court's orders and judgment granting attorney fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927 are REVERSED.

political speech.  For example, Riddle argues that an unusual number of city officials was involved in evaluating his situation.  Police Chief Silvers [sic], however, explains that 'given Mr. Riddle's history in the city and the climate between himself and the Mayor, I wanted this case handled in the most proper way possible, and I didn't want anybody saying that we had done anything wrong on this.' (Silvers [sic] Dep. at 25). Bushman only considered withdrawing her complaint because she was concerned, apparently correctly, that Riddle would sue her.  The evidence shows that Defendants were concerned about repercussion from prosecuting Riddle.

There is no evidence that negates probable cause for Riddle's arrest or that shows that retaliation was a motivating factor.  If Riddle's theory alone could present a jury question, no citizen who is critical of a local government could be arrested or prosecuted for an alleged crime because of the specter of a claim of retaliation.

(J.A., pp. 47, 55-56)

The District Court and the Magistrate Judge's findings regarding the award of attorney fees were based on the findings on Defendants' summary judgment motion, after discovery had taken place and the parties had filed their respective briefs.   Neither the District Court nor the Magistrate Judge made a finding that the claims were "groundless at the outset" nor a finding that Riddle and Irvine continued to litigate after it "clearly" became so.  The record below indicates no motions to dismiss were filed by any of the Defendants based on failure to state a claim or qualified immunity. Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  In evaluating the propriety of dismissal

under Rule 12(b)(6), the factual allegations in the complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). As the Supreme Court in *Christiansburg* and as noted by the Sixth Circuit in various opinions, including *Wilson-Simmons,* "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421.

A plaintiff who continues to litigate claims after discovery has concluded, proceeds to summary judgment, and a judge thereafter rules that the claims are without merit, does not necessarily support the conclusion that the plaintiff's claims were frivolous, unreasonable, or groundless, especially if there are viable claims intertwined to the meritless claims. Even though the claims after discovery are found to be without merit by a court, such a finding does not equate with a determination that the claims were without foundation when the complaint was initially filed. Although the District Court found that there was no evidence to support some of Riddle's claims, the District Court noted that discovery was "necessary" to evaluate Plaintiff's extensive complaint and to prepare the filings "necessary" to "obtain" summary judgment. If the underlying claims and Appellants' actions were frivolous, Defendants could have used Rule 12(b)(6) to narrow the claims at the onset of the case, rather than engaging in extensive discovery in order to "obtain" summary judgment. Rule 56 is a tool to narrow the factual and legal issues to be brought to trial but does not necessarily mean that a finding not in favor of a plaintiff means that the plaintiff has no basis for filing a complaint. "Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation." *Christiansburg*, 434 U.S. at 423. A potential plaintiff's fear of an increased risk of being assessed attorney fees after extensive discovery has taken place and who continues to proceed to a ruling on a summary judgment motion, would create a disincentive to the enforcement of civil rights laws and would have a chilling

been unnecessary and burdensome. The immunity defense was raised by Defendants *after* the parties engaged in extensive discovery.

The District Court stated it was aware of the extensive discovery in this case. "A district judge should not await the aggregation of what he considers multiple acts of misconduct and then levy an aggregated sanction without at least warning the attorneys at the time of each act or reserving decision upon timely requests by opposing counsel." *In re Ruben,* 825 F.2d at 990. "Discrete acts of vexatious conduct should be identified and a determination made whether they were done in bad faith or, even if bad faith was not present, whether they multiplied the proceedings pursuant to 28 U.S.C. § 1927." The District Court allowed discovery to accommodate Plaintiffs' extensive discovery and Defendants' response to such discovery. The District Court, apart from summarily noting that Plaintiffs engaged in extensive discovery, did not identify discrete acts of vexatious conduct by Plaintiffs' counsel. The District Court reasoned that it was reasonable for Defendants to engage in extensive discovery in order to evaluate Plaintiffs' extensive complaint and prepare the filings necessary to obtain summary judgment. This reasoning shows that Plaintiffs' Complaint had some merit sufficient for the parties to engage in extensive discovery. The District Court's finding that extensive discovery was requested and responded to by Defendants in order to prevail on summary judgment does not constitute vexatious conduct on behalf of Plaintiffs' counsel. As noted by the Magistrate Judge, "defendants made a tactical decision to participate in a scorched earth approach rather than to mitigate their damages. It is now too late to change course." (J.A., p. 88) The record does not show that Plaintiffs' counsel failed to comply with discovery or any other pretrial orders nor did Defendants file any motions to compel discovery from Plaintiffs. Other than Defendants' motions for attorney fees and costs, there is nothing on the record to show that Plaintiffs' counsel was engaged in unreasonable and

The District Court found that one of the reasons for Defendants' approach to discovery was a response to a situation manufactured by Plaintiffs and Plaintiffs' counsel. The District Court, however, did not find that Plaintiffs' counsels' actions were both unreasonable and vexatious. The District Court was aware of the extensive discovery requests by Plaintiffs but did not find that the requests were vexatious. If the District Court was concerned that the discovery requested by Plaintiff was unreasonable, it had the authority, in light of the Civil Rules of Procedure and the District Court's local rules, to limit or narrow the discovery. To the contrary, the District Court extended discovery to accommodate both parties. Defendants did not seek protective orders to limit the discovery requested by Plaintiffs nor did they file any motion to initially seek dismissal of any claims they thought were frivolous. Rules 26 to 37 of the Federal Rules of Civil Procedures set forth various ways discovery can be limited. Also, "[w]here a complaint contains 'glaring legal deficiencies,' the deficiencies and any ambiguities can be so easily resolved by motion that it is not unduly burdensome to defend." *In re Ruben*, 825 F.2d at 988. "A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *Id.* Defendants had the opportunity to limit the scope of discovery and issues before the District Court but chose not to do so. Defendants' litigation tactic was to engage in full blown discovery in order to make certain they would prevail on their motion for summary judgment. The District Court allowed the parties to proceed in this manner.

When a plaintiff files a complaint against a public official, the trial court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1596-97 (1998). The district court should resolve any immunity defense "before permitting discovery." *Id.* Defense counsel did not file any motions regarding the immunity defense prior to their summary judgment motions, subjecting the public officials to discovery which may have

effect on a plaintiff who seeks to enforce his/her civil rights, especially against a government official. See *Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001).

The District Court and the Magistrate Judge engaged in hindsight logic which the Supreme Court discourages. Riddle's claims were interrelated to his Fourth Amendment claim, which the District Court and the Magistrate Judge found was a viable claim. Riddle alleges that the impetus of the Complaint was based on an occurrence on December 29, 1994 where Riddle went to the home of Mary Clare Bushman, the Mayor's next-door neighbor, in an effort to demonstrate that the Mayor had constructed an addition to her home without the required permits and thereafter evaded property taxes. Mrs. Bushman's daughter, Megan Bushman, was at home at the time and spoke with Riddle about the property. After Riddle left, Miss Bushman, who believed Riddle was a City official, telephoned her mother about the incident. Mrs. Bushman then called the Mayfield Heights Building Department, was told that no city official had been at her home, and was advised to contact the police. Mrs. Bushman thereafter filed a complaint against Riddle with the police. After signing the Complaint, Mrs. Bushman told the City prosecutor that she did not want to go forward with the complaint and prosecution.

There was testimony by Councilman Donald Manno that Law Director Leonard Carr actively pursued consensus among Council members to prosecute Riddle for his conduct at a Building Committee meeting and that some Council members were counting on the criminal trespass prosecution to "cool [Mr. Riddle's] jets a little bit." (J.A., pp. 1631, 1638-1639). City Prosecutor George Argie testified that he met with Law Director Carr and the Mayor to review the proposed charges against Riddle on January 23, 1995, prior to the criminal complaint being filed, which was outside the normal process for exercising prosecutorial discretion. (J.A., p. 1416) The Chief of Police, Thomas Slivers, testified that immediately following Mrs. Bushman's report to the City

Building Department of a stranger at her home, Sheldon Socoloff of the City's Building Department, notified him of the incident. Mr. Socoloff, upon learning of Riddle's presence at the building Department facility, called Chief Slivers, who immediately went to the Building Department lot and took photos of Riddle to give Riddle "a taste of his own medicine." (J.A., pp. 2352-2353). Photographs were taken by Chief Slivers at 3:25 p.m. on December 29, 1994. The next morning, on December 30, 1994, Chief Slivers convened a meeting with two detectives and the incident report was immediately completed. (J.A., pp. 2354-2355) Riddle was found guilty of the criminal trespass charge which was reversed by the Ohio Court of Appeals. See *City of Mayfield Heights v. Lindell Riddle*, No. 68868, Eighth District Court of Appeals of Ohio (December 20, 1995). There was evidence presented that, subsequent to the December 24, 1994 incident, Riddle attended City Council meetings where his right to speak at some of the meetings was limited or denied. (J.A., pp. 402, 424, 448, 968, 972, 1005-1006) Council member Manno testified that a confrontation between Riddle and Defendant Zavarella, a political appointee of the Mayor, was coordinated by Zavarella and the City Law Director, Leonard Carr. (J.A., p. 1640).

The involvement of the City's civil attorney, Carr, in a criminal matter, the swiftness of the investigation, the meetings between the Mayor and other city officials regarding the incident, the comments by City Council members about the incident, and Riddle's belief that his right to speak at the Council meetings thereafter were limited or denied, formed the basis of Riddle's Complaint of conspiracy, violations of Fourth and First Amendments rights and related state law claims. Although Riddle did not ultimately prevail after extensive discovery was conducted by all parties and summary judgment motions were heard, there was sufficient evidence on the record to support  the basis of some of Riddle's claims. The Magistrate Judge specifically found that the Fourth Amendment claim "underlies each of Riddle's constitutional claims." (J.A., p. 52) Both the District Judge

(J.A., pp. 85-88) In awarding attorney fees for the discovery, the District Court noted that it was aware of the extent of the discovery and that it adjusted the deadlines to accommodate the parties' discovery. Specifically, the District Court found:

> The Magistrate Judge appeared to base her recommendation that discovery costs be denied on the misconception that the Court did not know of Plaintiffs' extensive discovery and would have reined them in if Defendants had objected. As it happens, the Court was well aware of the extent of the discovery depositions that were taken. Moreover, the Court adjusted the discovery deadlines to accommodate Plaintiffs' extensive discovery and Defendants' response to such discovery.

> Defendants' counsel correctly note that if they had not deposed many of the witnesses listed by Plaintiffs then assertions of professional malpractice could have been levied against Defense counsel for failing to adequately prepare this case for summary judgment and trial. The number of depositions, time, and fees in this case were preordained by the Plaintiffs and Plaintiffs' counsel by the manner in which the Plaintiffs filed their Complaint and proceeded with their discovery and litigation tactics.

> Defendants' approach to discovery was a reasonable response to a situation that was manufactured by Plaintiffs and Plaintiffs' counsel. The discovery taken by Defendants was necessary to evaluate Plaintiffs' extensive complaint and prepare the filings necessary to obtain summary judgment. The Court has reviewed Defendants' extensive efforts in the briefs filed in support of summary judgment and in the filings pertaining to Defendants' Motion for Attorneys Fees and finds that the effort expended by Defendants was necessary to establish that Defendants were entitled to Judgment as a matter of law on Plaintiffs' Complaint.

(J.A., p. 139)

kept a detailed chronology of events which supported his allegations and counsel further stated that he undertook investigation of various facts to determine the validity of plaintiffs' claims.

   This case was assigned to the standard track. Neither side attempted to follow the Local Rules regarding number of depositions, i.e. counsel for defendants did not attempt to prevent counsel for plaintiffs from taking 21 depositions. Neither party raised with this court any issue regarding abuse of discovery. Defendants made no attempt to seek this court's assistance in narrowing the discovery to relevant facts and issues. Defendants did not raise with the court any discovery problems which arose during depositions, such as the obstructive behavior by Mr. Riddle during his deposition, and did not seek court supervision of plaintiff's deposition.

* * *

. . . This court concludes that defendants are not entitled to fees and costs incurred during discovery. While the court does not criticize the approach taken by the defendants, that approach was a tactical decision made by their counsel. They could have sought court intervention to limit the scope of discovery but chose not to do so. The Case Management Plan put in place by this court, set forth in detail in the Local Rules of Court, and the discovery rules which are part of that plan are to be used by the court and by counsel to stop discovery abuses. The court cannot be a participant unless it is told what is taking place. This court is confidant that Judge Nugent would have "reined in" plaintiffs had he been notified of the problems. In other words, defendants made a tactical decision to participate in a scorched earth approach rather than to mitigate their damages. It is now too late to change course.

and the Magistrate Judge referred to facts which came to light during the extensive discovery to support the orders granting summary judgment and the attorney fee awards. The Magistrate Judge and the District Court cannot engage in post hoc analysis based on their findings in favor of Defendants on Defendants' summary judgment motions that Riddle and Irvine did not ultimately prevail. This type of hindsight analysis discourages individual citizens from bringing suits to enforce their civil rights. *Christiansburg*, 434 U.S. at 421. Defendants are frustrated for having to defend a suit by a private citizen who is an outspoken critic of City officials. The Constitution, however, provides citizens the right to exercise their voice, especially regarding public officials. A court must be sensitive that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997), *quoting Jones*, 789 F.2d at 1232. There is no finding by the lower court that the filing of the Complaint was an egregious case of misconduct by Plaintiffs. The District Court's finding that Riddle and Irvine's Complaint was frivolous and groundless and that Defendants be awarded fees under 42 U.S.C. § 1988 is not supported by the record.

## C.   28 U.S.C. § 1927

   Section 1927 of Title 28 provides:

   Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Litigation conduct is reviewed "for 'unreasonable and vexatious' multiplication of litigation despite the absence of any conscious impropriety." *Jones*,

789 F.2d at 1230. Absent a showing of bad faith, sanctions may be imposed "at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder*, 109 F.3d at 298, *quoting Jones*, 789 F.2d at 1230. "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder*, 109 F.3d at 298. "An attorney is liable under § 1927 solely for excessive costs resulting from the violative conduct." *Id.* at 299. Simple inadvertence or negligence that frustrates the trial judge will not support a sanction under § 1927. *In re Ruben*, 825 F.2d at 984. "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* "A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants." *Id.* at 988.

The District Court awarded attorney fees under § 1927 for hours related to the preparation of the summary judgment motions and the discovery conducted by the parties. Neither the Magistrate Judge nor the District Court made a finding of bad faith on the part of the attorneys representing Plaintiffs. Based on the finding above, Plaintiffs' claims were not frivolous. Under § 1927, a court must review whether the attorneys engaged in conduct which multiplied the litigation unreasonably or vexatiously. The Magistrate Judge did not recommend attorney fees for the discovery taken in this case. The Magistrate Judge noted that neither party attempted to follow the Local Rules regarding the number of depositions but that neither party raised with the court any issue regarding discovery abuse. The Magistrate Judge further noted that the defense made the tactical decision to follow an aggressive defense and "to participate in a scorched earth approach rather

than to mitigate their damages." (J.A., pp. 85-88) The Magistrate Judge specifically stated:

Counsel for defendant other than Zavarella argued that 39 witnesses had been deposed after plaintiffs identified 400 people as having knowledge of the facts of their case. He stated that the defendants took an 'aggressive' approach to defense because of Mr. Riddle's litigiousness. Moreover, counsel stated that he chose to videotape Mr. Riddle's deposition because of Mr. Riddle's refusal to answer questions in a straightforward manner. All of these defense decisions, according to defense counsel, were prompted by the nature of the lawsuit and by Mr. Riddle's history of litigation. Counsel argued that he attempted to persuade plaintiffs to dismiss the lawsuit. The legal fees and costs to the defendants (except Zavarella) totaled in excess of $160,000.

Counsel for defendant Zavarella argued that he followed the lead of other defense counsel with respect to depositions and other discovery decisions. He argued that he had permitted Zavarella to be interviewed by counsel for plaintiffs at length after the suit was filed in an attempt to persuade plaintiffs to dismiss Zavarella from the suit. Zavarella seeks fees and costs in the amount of $38,998.05.

Plaintiffs oppose the motions. Plaintiffs' counsel argued that the discovery requests served by defendants were very broad and hence broad answers were merited. He further stated that after the second status conference he disclosed to co-counsel for defendants, in writing, the identities of the witnesses he would call at trial and that each time Mr. Riddle named an individual during deposition, the defendants deposed that individual. That included the deposition of a physician seen by Mr. Riddle six years earlier taken as a defense to an emotional distress claim. Plaintiffs' counsel stated that his client