NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0143n.06
Filed: December 1, 2004

Case No. 03-5748

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENTUCKY RESTAURANT CONCEPTS INC., ET AL., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CITY OF LOUISVILLE, ET AL., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellants, adult entertainment establishments P.T.'s and Deja Vu and individual owners, operators, and performers employed by those establishments, challenged a Louisville ordinance regulating "adult" businesses and "cabarets" as violative of their First Amendment right to erotic expression. The district court held that the substantive provisions of the ordinance were constitutional but that the licensing fees and procedures and inspection requirements were not. The district court also found that the constitutional provisions could not be severed from the unconstitutional provisions and therefore enjoined the enforcement of the ordinance in its entirety. The appellants appealed the rulings on the substantive provisions of the ordinance upheld by the district court and filed a motion pursuant to 42 U.S.C. § 1988 requesting attorney fees. The defendants-appellees objected to the amount of the request.

The trial court reduced the requested attorney fees and expenses from $254,859.54 to $147,573.64. The appellants now appeal the reduction of attorneys fees. For the reasons set forth below, we affirm the decision of the district court reducing the attorney fee award.

**I.**

In June 2002, the District Court for the Western District of Kentucky enjoined the enforcement of an adult entertainment regulatory ordinance enacted by the City of Louisville (the "ordinance"). *Ky. Rest. Concepts, Inc. v. City of Louisville*, 209 F. Supp. 2d 672 (W.D. Ky. 2002). The plaintiffs challenged virtually every aspect of the ordinance, requiring the court to "consider the ordinance in unusual length and detail." *Id*. at 675. The court first held that the three foot "buffer zone" and "no touch" provisions were constitutional.[1] The court also held that the disclosure requirements of the ordinance compelling operators and performers to divulge personal information, including name, address, date of birth, social security number, criminal history, and fingerprints, were constitutional, as long as public dissemination of the information was restricted. Likewise, the court ruled that the City could request an applicant's social security number but could not deny a license solely because an applicant refused to disclose the information. The court held that the "criminal disability" provisions of the ordinance were constitutional, because the duration of five years was not excessive, the inclusion of non-sex disabling offenses did not violate the Constitution, and a relationship existed between the offenses included and the secondary effects targeted by the ordinance. The court also found that the strict liability provision of the ordinance was constitutional,

---

[1]The ordinance as amended in 1998 prohibited physical contact between an entertainer and other persons during a performance, required all performances to occur on a stage at least eighteen inches above floor level, and required performers to remain at least three feet away from all other persons during a performance.

because it was one factor among many in licensing proceedings. In addition, the court concluded that the conjunction of the penalty provision of the ordinance with the license revocation and suspension provisions did not pose a double jeopardy problem.

With regard to the inspection provision of the ordinance, the court held that, because there were no time restrictions, the requirement was unconstitutional. The licensing fees were also found to be unreasonably high and therefore unconstitutional.[2] Finally, the court found that the licensing procedures were unconstitutional, in that they did not provide for the maintenance of the status quo or for prompt judicial review as mandated in *Freedman v. Maryland*, 380 U.S. 51 (1965).[3] Because the constitutional defects in the ordinance's application and appeals procedures made enforcement of any remaining part of the ordinance impossible, the district court enjoined the ordinance in its entirety.

Following the trial, the appellants filed a notice of appeal seeking review of the rulings upholding particular provisions of the ordinance. That appeal was recently decided by a panel of this court which found that the only issue properly before the court was the question of damages. *See Ky. Rest. Concepts, Inc. v. City of Louisville*, Nos. 02-5885, 02-5888, 2004 WL 2299274, at *1 (6th Cir. Oct. 6, 2004). The panel agreed that the question was not overtly considered by the district

_____

[2]The annual fees were $5,000 for "adult cabarets" (full nudity allowed, sale of alcohol prohibited), $3,000 for "cabarets" (topless entertainment allowed, sale of alcohol permitted), and $100 for performers at both types of establishments.

[3]In *Freedman*, the Supreme Court invalidated a regulatory scheme for censoring motion pictures. 380 U.S. at 59. The Court held that a system of prior restraint is constitutionally permissible only if administered under three procedural safeguards. *Id*. at 58-59. First, the decision whether to issue a license must be made in a specified and brief period of time and the status quo must be maintained until there is a judicial determination on the merits. Second, the procedure must ensure a prompt final judicial decision. Third, the burden of proving that the expression is unprotected is on the censor. *See id*.

court's June 12, 2002, order and remanded the case for consideration of damages. *Id.* The panel also denied the appellees' motion to dismiss. *Id.* We therefore do not address the appellees' motion to dismiss.

The appellants also moved for attorney's fees and expenses pursuant to 42 U.S.C. § 1988. The district court awarded appellants $121,319.64 in attorneys fees and $23,254.00 for reimbursement of expenses, instead of the $254,859.54 total requested.

There were two groups of plaintiffs in the underlying litigation: the "P.T.'s Plaintiffs" and the "Deja Vu Plaintiffs." Both are appealing the district court's attorney fee order. The P.T.'s Plaintiffs retained Allan Rubin, a Southfield, Michigan, attorney whose practice concentrates on First Amendment law, as well as "local" counsel Robert McClure and E. Brian Davis of the Louisville law firm Kruger, Schwartz & Morreau. The Deja Vu Plaintiffs retained Bradley Shafer, a Lansing, Michigan, attorney whose practice concentrates on representing businesses engaged in dissemination of constitutionally protected speech, and Louisville attorney Frank Mascagni as "local" counsel. The district court granted the plaintiffs all of the requested out-of-pocket expenses, except for the reimbursement of expert witness fees,[4] and granted each attorney his requested hourly rate. Ultimately, the court awarded the plaintiffs approximately 57% of the attorney fees requested. The court reduced the lodestar amount by 10% due to duplication of effort, disallowed fees for pre-litigation lobbying efforts in the amount of $17,272, and further reduced the lodestar amount by 35% based on the plaintiffs' partial, as opposed to complete, success.

**II.**

---

[4]Appellants do not take issue with the ruling regarding reimbursement for expenses associated with expert witnesses.

The standard of review on appeal in an attorney fees case is abuse of discretion. *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001). The district court's award of attorney fees under 42 U.S.C. § 1988 is entitled to substantial deference in light of that court's superior knowledge and understanding of the litigation. *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000).

**A.**

There is no dispute that the appellants were the prevailing parties in this action or that they are entitled to some amount of attorney fees pursuant to 42 U.S.C. § 1988. Likewise, the method and final computation of the "lodestar," or the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," are not being challenged. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). What is at issue is the trial court's adjustment of the lodestar figure based on the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The relevant factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19. *See also Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (holding that the lodestar amount may be adjusted based on the factors articulated in *Johnson).*

The appellants first challenge the district court's reduction of the lodestar amount by 10% based on duplication of effort. The district court concluded that "multiple attorneys spent considerable time doing very similar work," the "amount of overall attorney time [was] excessive," and the plaintiffs hired too many attorneys. "Hours may be cut for duplication, padding, or frivolous claims" by the "arbitrary but essentially fair approach of simply deducting a small percentage of the total hours." *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 636-37 (6th Cir. 1979); *see also Hensley*, 461 U.S. at 436-37. "The lower court's determination that an indefinite number of the hours claimed by Plaintiffs are excessive or duplicative is a finding of fact, which is to be affirmed unless clearly erroneous." *Wayne v. Vill. of Sebring,* 36 F.3d 517, 532 (6th Cir. 1994).

Though district courts have substantial discretion in determining the amount of an attorney fee award, it is also important that a "concise but clear explanation of [their] reasons for the fee award" be given. *Hensley*, 461 U.S. at 437. "A district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). Here the district court stated:

> Though the time of no one attorney seems excessive, the overall amount of attorney's fees seems quite large where the case itself was active for less than a year and required only a modest degree of discovery. . . . Plaintiffs are not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job.

This statement is both concise and clear. The district court also stated that two law firms would have been sufficient as opposed to four. Appellants point out that there were two sets of plaintiffs, each subject to different provisions of the ordinance and entitled to separate counsel; that each hired an out of state of attorney experienced in First Amendment litigation; that retaining local counsel is advisable if not necessary when out of state lawyers are acting as lead counsel; and that the attorneys

involved specifically divided responsibilities to minimize duplication. These assertions are not enough to demonstrate clear error. A 10% reduction is a "modest amount." The 10% reduction represents approximately $22,290.00. A much larger percentage reduction of 25% was upheld in *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), based on "duplication of effort in trial, trial preparation, and the pre-trial conference." The trial court did not abuse its discretion in reducing the requested amount by 10%.

**B.**

The district court deducted $17,272.00 of fees accumulated in lobbying activities. Based on the hourly rates of the attorneys and the hours disallowed by the district court, it appears that the appellants are correct in asserting that there was a $299.50 mathematical error in the calculation. The amount of the deduction should have been $16,972.50 as opposed to $17,272.00.

Prevailing parties recover for time reasonably expended on the litigation. *Hensley,* 461 U.S. at 433. Time spent lobbying a legislative body prior to filing a lawsuit is not time "reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993). A court's decision to "deny any fees for time spent pursuing optional administrative remedies [is] well within the range of reasonable discretion." *Webb v. County Bd. of Educ. of Dyer County*, 471 U.S. 234, 244 (1985).

The appellants attempt to characterize the time attorneys spent opposing the passage of the ordinance as "mandatory evidence activities" (as opposed to lobbying) because the information gathered and presented to the Board of Aldermen prior to the enactment of the ordinance was also submitted at trial to rebut the City's assertion that adult entertainment establishments cause negative secondary effects. Appellants argue that the information gathered and presented prior to the

enactment of the ordinance was necessary in the litigation to refute the City's evidence of negative secondary effects. *See City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425 (2002)*; City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000); *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986); and *Peek-A-Boo Lounge of Bradenton, Inc., v. Manatee County*, 337 F.3d 1251 (11th Cir. 2003). This argument is similar to the petitioner's unsuccessful argument in *Webb* that school board hearings were either proceedings themselves or that the time spent in the hearings was reasonably expended in preparation for court action. *See* 471 U.S. at 240. In that case, the Supreme Court affirmed the denial of fees for time related to the school board hearings. *Id*. at 244.

As appellants argue, *Peek-A-Boo Lounge* establishes that "plaintiffs challenging the ordinance after passage must be given opportunity to 'cast direct doubt on [the municipality's] rationale, either by demonstrating that the municipality's evidence does not support its rationale, or by furnishing evidence that disputes the municipality's factual findings.'" 337 F.3d at 1265 (quoting *Alameda Books*, 535 U.S. at 438-39). Appellants' reliance on *Peek-A-Boo Lounge* is misplaced, however, because the case did not address attorney fees, and the court did not hold that lobbying the legislative body prior to the passage of the ordinance was a prerequisite to filing the lawsuit. The Fifth Circuit addressed this issue directly, stating that, "[w]hile, at times, it may be advisable to pursue political alternatives before resorting to litigation, these activities, occurring before the initiation of a lawsuit, are not within the purview of 'litigation.'" *Watkins*, 7 F.3d at 458.

Because the lobbying occurred before the lawsuit was filed and was not a necessary prerequisite to filing suit, the district court did not abuse its discretion in deducting the hours spent on lobbying activities.

**C.**

It is well established that after determining the basic lodestar, the degree of success obtained is the most important factor in determining the reasonableness of a fee award. *Hensley*, 461 U.S. at 434-36 (stating that, in addition to the initial calculation of the lodestar, there are "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief.") (footnote omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992). *Hensley* developed a two part inquiry for adjustment of the fee amount based on "results obtained." 461 U.S. at 434. We ask first, whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," and, second, whether the level of success was such that "the hours reasonably expended" are a "satisfactory basis for making a fee award[.]" *Id. Hensley* goes on to point out that in some cases there are distinctive claims for relief based on different facts and legal theories, and sometimes the claims involve a common core of facts and related legal theories, which means most of counsel's time is devoted to the litigation as a whole. *Id*. at 434-35. The district court concluded that this case fell into the former category and that appellants obtained a "good" but not an "excellent" result. A downward adjustment of the lodestar was therefore warranted. The district court reasoned that the attacks on the substantive and procedural aspects of the ordinance were distinct issues calling for distinct remedies and held that "[w]hile Plaintiffs did end up with a permanent injunction in their favor, the Court's ruling represents less than a complete victory." Consequently, the court further reduced the lodestar amount by 35%, resulting in a fee award of $121,319.64.

As stated earlier, the court upheld the substantive provisions of the ordinance but nevertheless enjoined the ordinance in its entirety because of the unconstitutional aspects of the inspection and licensing requirements. The district court points out that had the appellants prevailed on the challenges to the substantive provisions of the ordinance, the City would have had a much harder time reinstating the ordinance. Because only the procedural aspects of the ordinance were constitutionally defective, the City could have easily drafted a subsequent ordinance comporting with the court's order and rendering the substantive provisions enforceable. The appellants themselves realized that they did not achieve complete success, evidenced by their appeal challenging the rulings on the substantive provisions of the ordinance.

While it might have been reasonable for the trial court to award the full amount of requested fees (after the duplication and lobbying reductions), the 35% reduction for partial success can not be characterized as an abuse of discretion. *Hensley* supports the trial court's reduction in the fee amount: "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." 461 U.S. at 436. The appellants, though they received the desired relief, were not successful on all of their claims. It was not outside the range of reasonable discretion for the district court to characterize the appellants' claims as "distinctly different" and "based on different facts and legal theories." *Id.* at 434. Also, the across-the-board reduction as opposed to excising specific hours is permissible, considering there is "no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated,

or it may simply reduce the award to account for the limited success." *Id.* at 436-37.  The 35%

reduction based on partial success is affirmed.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.  Due to the district

court's mathematical error, $299.50 is added to the appellants' attorney fee award.